Case No. 22-7054

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

TIMOTHY BYERS, *individually*,
*Defendant/Appellant*

*vs.*

SAVANAHA WORKS,
*Plaintiff/Appellee*

---

**APPELLANT TIMOTHY BYERS' CORRECTED BRIEF IN CHIEF**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
19-cv-00389-EFM
HONORABLE ERIC F. MELGREN, CJ DISTRICT OF KANSAS
BY DESIGNATION

---

GOOLSBY PROCTOR
Seth D. Coldiron (OBA #20041)
701 N. Broadway Ave., Suite 400
Oklahoma City, Oklahoma 73102
Telephone: (405) 524-2400
dproctor@gphglaw.com
scoldiron@gphglaw.com

---

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iii

PRIOR OR RELATED APPEALS ................................................................. vi

I. JURISDICTIONAL STATEMENT................................................................1

II. STATEMENT OF ISSUES........................................................................2

III. STATEMENT OF THE CASE .................................................................2

IV. SUMMARY OF ARGUMENT ................................................................13

V. STANDARD OF REVIEW......................................................................15

VI. ARGUMENTS ........................................................................................17

    ISSUE NO. 1:    WHETHER THE DISTRICT COURT ERRED BY APPLYING THE WRONG BURDENS OF PROOF ....................... 17

    ISSUE NO. 2:    WHETHER THE DISTRICT COURT'S FACTUAL FINDINGS WERE ERRONEOUSLY BASED UPON A VISIBLE FICTION BLATANTLY CONTRADICTED BY THE RECORD EVIDENCE............................................................ 22

    ISSUE NO. 3:    WHETHER WORKS WAS ENTITLED TO AN ADVERSE INFERENCE THAT BYERS COERCED HER TO HAVE SEX ...... 29

    ISSUE NO. 4:    WHETHER THE LAW WAS CLEARLY ESTABLISHED ON NOVEMBER 13, 2017 THAT AN INMATE'S UNMANIFESTED SUBJECTIVE FEAR MAY ESTABLISH A LACK OF CONSENT................................................................ 34

VII. CONCLUSION ......................................................................................37

ORAL ARGUMENT ....................................................................................39

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)...........................40

CERTIFICATE OF DIGITAL SUBMISSION ..........................................41

CERTIFICATE OF SERVICE....................................................................42

CERTIFICATION UNDER ECF PROCEDURES......................................43

**Attachment 1**
MEM. AND ORDER (DOC. #112) (SEP. 29, 2022)………………………............. 1

# TABLE OF AUTHORITIES

## *CASES*

*Ahmad v. Furlong*,
  435 F.3d 1196 (10th Cir. 2006) ............................................................15

*Allstate Sweeping, LLC v. Black*,
  706 F.3d 1261 (10th Cir. 2013) ............................................................24

*Baca v. Rodriguez*,
  554 Fed. Appx. 676 (10th Cir. 2014) ......................................... 20, 35

*Baxter v. Palmigiano*,
  425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) ......................29

*Brink's Inc. v. City of New York*,
  717 F.2d 700 (2d Cir. 1983) .................................................................33

*Brown v. Flowers*,
  974 F.3d 1178 (10th Cir. 2020) ............................................................20

*Cox v. Glanz*,
  800 F.3d 1231 (10th Cir. 2015) ............................................................23

*Crowson v. Washington Cnty. Utah*,
  983 F.3d 1166 (10th Cir. 2020) .................................................... 15, 23

*Est. of Beauford v. Mesa Cnty.*,
  35 F.4th 1248 (10th Cir. 2022) .............................................................16

*Est. of Booker v. Gomez*,
  745 F.3d 405 (10th Cir. 2014) ....................................................... 16, 18

*Est. of Lockett v. Fallin*,
  841 F.3d 1098 (10th Cir. 2016) ............................................................15

*Graham v. Sheriff of Logan Cnty.*,
  741 F.3d 1118 (10th Cir. 2013) ................................ 13, 20, 21, 24, 28, 35, 36, 37

*Grissom v. Roberts*,
  902 F.3d 1162 (10th Cir. 2018) ............................................................16

*Hale v. Boyle Cnty.*,
  18 F.4th 845 (6th Cir. 2021) ......................................... 24, 28, 36, 37

*Johnson v. Spencer*,
  950 F.3d 680 (10th Cir. 2020) ..............................................................18

*Kerns v. Bader*,
 663 F.3d 1173 (10th Cir. 2011)..............................................................14

*Lewis v. City of Edmond*,
 48 F.4th 1193 (10th Cir. 2022)..............................................................1

*LiButti v. United States*,
 107 F.3d 110 (2d Cir. 1997) ...................................................... 29, 31

*Lynch v. Barrett*,
 703 F.3d 1153 (10th Cir. 2013)..............................................................23

*Malley v. Briggs*,
 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ....................................15

*Mullenix v. Luna*,
 577 U.S. 7, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) ........................................15

*Paugh v. Uintah Cnty.*,
 47 F.4th 1139 (10th Cir. 2022)............................................... 1, 15, 22

*Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*,
 978 F.3d 1165 (10th Cir. 2020)..............................................................16

*S.E.C. v. Invest Better 2001*,
 2005 WL 2385452 (S.D.N.Y. May 4, 2005).......................................................30

*S.E.C. v. Pittsford Capital Income Partners, L.L.C.*,
 2007 WL 2455124 (W.D.N.Y. Aug. 23, 2007).....................................................30

*Scott v. Harris,*
 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ......................................23

*Smothers v. Solvay Chems., Inc.*,
 740 F.3d 530 (10th Cir. 2014)..............................................................17

*Tech. Licensing Corp. v. Videotek, Inc.*,
 545 F.3d 1316 (Fed. Cir. 2008) ...................................... 17, 18, 19, 20

*Thomson v. Salt Lake Cty.,*
 584 F.3d 1304 (10th Cir.2009)..............................................................24

*Twigg v. Hawker Beechcraft Corp.*,
 659 F.3d 987 (10th Cir. 2011)................................................... 16, 17

*U.S. S.E.C. v. Suman*,
 684 F. Supp. 2d 378  (S.D.N.Y. 2010)......................................................29

*Ullery v. Bradley*,
　949 F.3d 1282 (10th Cir. 2020)..............................................................35

*United States ex rel. Burlbaw v. Orenduff*,
　548 F.3d 931 (10th Cir. 2008)................................................................24

*United States v. Certain Real Prop. Known as 4003-4005 5th Ave., Brooklyn, N.Y.*,
　55 F.3d 78 (2d Cir. 1995) ......................................................................31

*Wood v. Beauclair*,
　692 F.3d 1041 (9th Cir. 2012) ....................................................... 21, 35

## STATUTES

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

28 U.S.C. § 1343 ........................................................................................1

## OTHER AUTHORITIES

**Exhibit 1**
　Mem. and Order (Doc. #112) (Sep. 29, 2022) at 1-39 ...........................1

## RULES

FED. R. CIV. P. 56(a)...................................................................................16

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. VIII..............................................................................1

## PRIOR OR RELATED APPEALS

Pursuant to 10TH CIR. R. 28.2(C)(3), Defendant/Appellant Timothy Byers states that there are no prior or related appeals.

**APPELLANT TIMOTHY BYERS' CORRECTED BRIEF IN CHIEF**

## I.
## JURISDICTIONAL STATEMENT

Plaintiff/Appellee Savanaha Works ("Works") alleges Defendant/Appellant Timothy Byers ("Byers"), a detention officer, had nonconsensual sex with her on November 13, 2017 while she was incarcerated at the Pushmataha County jail in violation of her constitutional and civil rights under the U.S. Const. amend. VIII and the Civil Rights Act of 1871, 42 U.S.C. § 1983. *See*, App. at 000016-034. On February 10, 2022, Byers moved for summary judgment asserting he was qualifiedly immune from suit. *See*, App. at 000075-106. On September 29, 2022, the District Court for the Eastern District of Oklahoma ("District Court") denied Byers's motion.[1] The District Court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and § 1343 (civil rights). The United States Court of Appeals for the Tenth Circuit ("this Court") has jurisdiction over Byers' appeal pursuant to 28 U.S.C. § 1291 and the collateral-order doctrine.[2]

---

[1] *See*, App. at 000716-754. A copy of the District Court's order is attached. *See*, Mem. and Order (Doc. #112) (Sep. 29, 2022) at 1-39 attached as "**Exhibit 1**."

[2] *See*, *Lewis v. City of Edmond*, 48 F.4th 1193, 1194 (10th Cir. 2022) ("Our jurisdiction to review this denial, though limited, arises under 28 U.S.C. § 1291 via the collateral order doctrine"); *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1152 (10th Cir. 2022) (same).

## II.
## STATEMENT OF ISSUES

**ISSUE NO. 1:**    Whether the District Court erred by applying the wrong burdens of proof.

**ISSUE NO. 2:**    Whether the District Court's factual findings were erroneously based upon a visible fiction blatantly contradicted by the evidence.

**ISSUE NO. 3:**    Whether Works was entitled to an adverse inference that Byers coerced her to have sex.

**ISSUE NO. 4:**    Whether the law was clearly established on November 13, 2017 that an inmate's unmanifested subjective fear evidences a lack of consent.

## III.
## STATEMENT OF THE CASE

On July 2, 2017, Works was arrested under suspicion of possessing narcotics and prostitution after leaving the casino hotel in Antlers driving toward Texarkana. *See*, App. at 000081 ¶1, 000107-111, 000116-117 & 000119; *and see*, App. at 0000682 (objecting to the relevance and admissibility of these facts without disputing the facts). On July 25, 2017, Works was charged with trafficking narcotics and, being unable to post bond, was booked into the Pushmataha County jail. *See*, App. at 000082 ¶5, 000119-120, 000188, 000190-191; *and see*, App. at 000682 (objecting to the relevance and admissibility of these facts without disputing the facts).

2

On November 1, 2017, Works plead guilty to trafficking narcotics and was sentenced to one (1) year in jail with credit for time served. *See*, App. at 000082 ¶7, 000193-195; *and see*, App. 000683 (objecting to the relevance and admissibility of these facts without disputing the facts). Works was a "trustee" within the jail and allowed more freedom of movement to perform work such as cooking, cleaning, laundry, or performing work outside the jail with the road crew. *See*, App. at 000082 ¶8, 000122-125, 000128, 000177; *and see*, App. at 000683 (admitting these facts). Works did not know Byers prior to being incarcerated, and she was already in jail when Byers was hired as a detention officer. *See*, App. at 000082 ¶9, 000128, 000176; *and see*, App. at 000683 (admitting these facts).

Bonnie Moore ("Moore"), one of Works' cellmates, testified that Works often flirted with detention officers (including Byers) and other male inmates saying things like she wanted "to get her some." *See*, App. at 000082 ¶10, 000198-202, 000214-216; *and see*, App. at 000683 (objecting to this as inadmissible hearsay). According to Moore and another inmate, Vanessa Cabrera ("Cabrera"), Works also flashed her breasts at Byers sometime prior to November 13, 2017. *See*, App. at 000082 ¶11, 000202, 000242; *and see*, 000683 (disputing these facts and providing additional facts related to Byers' interaction with a different female inmate). Works denies flashing her breasts (or any body parts), teasing, or speaking sexually to Byers

before the incident, but she admits other inmates flashed him. *See*, App. at 000083 ¶12, 000129-131; *and see*, App. at 000683 (admitting these facts).

On November 14, 2017, Detention Officer Pattie Erwin ("Erwin") arrived at the jail and began her usual rounds when another inmate, Patricia Norris ("Norris"), informed her that the night before Byers had removed Works from her cell and "forced" her to have sex in the laundry room, which Erwin immediately reported to the Jail Administrator, Enjolie Johnson ("Johnson") who informed Sheriff B.J. Hedgecock ("Sheriff Hedgecock"), coordinated with the Information Technology technician to review the surveillance video, and contacted Special Agent Steven Carter ("Agent Carter") with the Oklahoma State Bureau of Investigation ("OSBI") to investigate. *See*, App. at 000083 ¶13, 000229-230, 000295-299, 000336-339; *and see*, App. at 000683 (admitting these facts). Later that afternoon, Agent Carter spoke with Johnson and then interviewed inmates who witnessed the events, beginning with Works. *See*, App. at 000083 ¶14, 000297-299; *and see*, App. at 000683 (admitting these facts).

After "lights out" on November 13, 2017, Byers told Works that he needed her to retrieve a three extra-large (3x) jumpsuit and a piece of paper out of the laundry room. *See*, App. at 000083 ¶16, 000024 ¶39, 000134-135, 000155, 000233, 000300, 000349 (video filed conventionally); *and see*, App. at 000686 (admitting these facts). Works believed that Byers asked her to retrieve the items because the

4

assigned laundry trustee was asleep. *See*, App. at 000083 ¶17, 000135; *and see*, App. at 000684 (purportedly disputing these facts with a substantially similar summary). Works got up, left her cell, exited the women's pod, and entered the laundry room as Byers followed her, but she cannot recall if he stayed in there with her the entire time. *See*, App. at 000084 ¶18, 000024 ¶39, 000136, 000349 (video filed conventionally); *and see*, App. at 000684 (purportedly disputing these facts with a substantially similar summary).

Works had a conversation with Byers near the filing cabinets in the laundry room when Kayla Wells ("Wells") and Moore overheard her tell Byers, "It's whatever you want," but Works could not remember telling him that. *See*, App. at 000084 ¶19, 000161-163, 000205-208, 000233, 000248, 000250, 00312-318, 000349 (video filed conventionally); *and see*, App. at 000684 (purportedly disputing these facts without reference to them or any additional facts).

After Works found the 3x jumpsuit and gave it to Byers, he then asked her to find a piece of paper, which she claims never to have found. *See*, App. at 000084 ¶20, 000136-137, 000155, 000233, 000349 (video filed conventionally); *and see*, App. at 000684 (purportedly disputing these facts with a substantially similar summary). While Works was looking for the piece of paper, Byers returned and told her to "drop them," which confused her for a second, but Byers indicated that he meant her pants. *See*, App. 000084 ¶21, 000024 ¶39, 000137-138, 000155-156,

000233, 000301, 000349 (video filed conventionally); *and see*, App. at 000684 (purportedly disputing these facts with a substantially similar summary).

Works told Byers something like, "what the f*#k are you talking about," but, once she understood, Works complied ***without yelling for anyone to help or trying to leave the laundry room***.  *See*, App. at 000084 ¶22, 000024 ¶¶39-40, 000138-139, 000155-159, 000233, 000349 (video filed conventionally); *and see*, App. at 000685 (explaining Works' reasons for not calling out for help).  Works claims that Byers physically blocked the door to prevent her from leaving. *See*, App. at 000684. However, the video does not depict Works ever trying to leave or Byers ever blocking her escape. *See*, App. at 000349 (video filed conventionally).

Works turned her back to Byers, pulled down her pants, bent over and touched her toes, and, thereafter, felt Byers penetrate her vagina with his finger.  *See*, App. at 000084 ¶23, 000024 ¶40, 000141-143, 000156-157, 000233-234, 000302-303, 000349 (video filed conventionally); *and see*, App. 000684 (purportedly disputing these facts with a substantially similar summary). Works did not hear Byers unzip his pants, did not see his pants fall to his ankles, and never saw him expose his penis. *See*, App. at 000084 ¶24, 000143-146; *and see*, App. at 000684 (purportedly disputing these facts without reference to them or any additional facts).

Moore believes that if someone had called out for help while in the laundry room that she could have heard it in her cell.  *See*, App. at 000084 ¶25, 000139-140,

6

000213; *and see*, App. at 000685 (arguing this fact is irrelevant and offering additional facts supporting Works' reason for failing to call for help). At some point, Cabrera yelled something, which may have encouraged Byers and Works to conclude their activities. *See*, App. at 000085 ¶26, 000147-148, 000158, 000234, 000307-308; *and see*, App. at 000685 (disputing these facts as irrelevant and inadmissible hearsay conceding that Works heard Cabrera call out something while disputing what exactly Cabrera said). Afterward, Works claims she pulled up her pants and returned to her cell without doing anything else in the laundry room and without finding any piece of paper. *See*, App. at 000085 ¶27, 000148-149, 000234, 000349 (video filed conventionally); *and see*, App. at 000685 (denying this fact).

Works testified that ***Byers never asked her to have sex with him and never promised her anything in exchange for sex*** and that she never offered to have sex with Byers and never promised him anything in exchange for sex. *See*, App. at 000085 ¶29, 000024 ¶40, 000144-145, 000163; *and see*, App. at 000686 (denying any implication that sex was consensual without disputing these facts). Byers did not touch Works' breasts, bottom, or any other part of her body with any part of his body. *See*, App. at 000085 ¶30, 000147; *and see*, App. at 000686 (arguing these facts are irrelevant).

After returning to her cell, Works told her cellmate, Ashley Wisenhunt ("Wisenhunt"), either that she was "tripping" or that what just happened "was not

cool" without telling her what had actually happened. *See*, App. at 000085, ¶31, 000150, 000159-160, 000234, 000244, 000309-310; *and see*, App. at 000686 (admitting these facts). Works was upset and cried but went to sleep and got up the next morning to perform her trustee duties without reporting the incident to anyone else. *See*, App. at 000085 ¶32, 000152-153; *and see*, App. at 000686 (purportedly disputing these facts with a substantially similar summary while arguing she did not report the incident because she was afraid). According to her other cell mate, Moore, Works never appeared upset or anxious after the incident and never said anything about anyone forcing themselves on her. *See*, App. at 000085 ¶33, 000209-210, 000213, 000216-217; *and see*, App. at 000686 (purportedly disputing these facts without reference to them or any additional facts).

Besides telling Wisenhunt, Works did not have any discussions with any other inmates about what had happened. *See*, App. at 000085 ¶34, 000153-154; *and see*, App. at 000686 (purportedly disputing these facts with a substantially similar summary). Works did not tell any of the other inmates that she intended to report the incident, and she did not ask any of the other inmates to report the incident for her. *See*, App. at 000086, ¶35, 000150-151; *and see*, App. at 000686 (purportedly disputing these facts with a substantially similar summary).

Works did not report the incident because she was scared of what the jailers may do to her since the jailers were mean, and she feared being pepper sprayed even

8

though she admits that no other jailers ever mistreated her, and she could not state any specific reason for believing the jailers were mean or fearing she would be pepper sprayed. *See*, App. at 000086, ¶36, 000151-152; *and see*, App. at 000686 (purportedly disputing these facts with substantially similar summary). Works contends her failure to report the incident does not imply that she consented. *See*, App. at 000686. She argues that her fear of reprisal from the officers prevented her from reporting the incident. *See id*.

The video shows a few discrepancies in Works' story. *See*, App. at 000087 ¶46, 000024 ¶41, 000349 (video) at 23:16:00 – 23:24:00; *and see*, App. at 000687 (disputing that video shows any discrepancies). While Works claimed to have had her back turned toward Byers, there is, at least, a segment where Byers and Works appear to embrace as Works grabs the back of Byers' neck while he lifts her up onto a counter. *See*, App. at 000087 ¶47, 000142-143, 000340, 000349 (video) at 23:17:40 – 23:17:43; *and see*, App. at 000687 (arguing that nothing can be seen on the video between 23:17:40 and 23:17:43 and offering additional commentary on other portions of the video between 23:19:52 – 23:22:38 purportedly showing Byers thrusting his pelvis toward Works).

Works also denied finding the piece of paper, but the video clearly shows her picking up a paper slip off the floor, which she hands to Byers, who merely glances at it, tosses it back onto the floor, and leaves. *See*, App. at 000087 ¶48, 000148-149,

000349 (video) at 23:22:30 – 23:23:41; *and see*, App. at 000687 (admitting that Works appeared to hand Byers an envelope). Thereafter, Works continues to linger a few moments in the laundry room, opening a desk drawer, shuffling things around, saying something to Byers across the hall, and shrugging her shoulders (as if she was still looking for something) before she calmly returned to the female pod and her cell, opening and closing both the gate and cell door along the way, without appearing distraught, upset, nervous, or anxious. *See*, App. at 000087 ¶48, 000349 (video) at 23:22:30 – 23:23:41; *and see*, App. at 000687 (disputing the description of Works' behavior as irrelevant and improper comments of counsel).

Johnson reviewed the video and confirmed that Byers had taken Works to the laundry room around 11:14 pm (23:14), but she acknowledged the video did ***not*** show Byers using any "force" and did ***not*** show any sexual intercourse although, clearly, Byers was engaged with Works alone in some type of inappropriate act. *See*, App. at 000087 ¶49, 000229, 000337-340, 000349 (video) at 23:16:09 – 23:16:18; *and see*, App. at 000687 (arguing that Works complied with Byers' demands because she was frightened). Sheriff Hedgecock also reviewed the video, which he described as showing Byers removing Works from her cell, taking her to the laundry room, and behaving inappropriately, but he confirmed that the video did ***not*** show Byers and Works engaged in sexual intercourse, Works exposing herself to Byers, or Byers exposing himself to Works, or any type of sexual act. *See*, App. at 000088 ¶50,

000352-353; *and see*, App. at 000687 (arguing that Works complied with Byers'
demands because she was afraid). Since Oklahoma law and jail policy prohibit any
sexual activity with an inmate, regardless of consent, neither Sheriff Hedgecock nor
Johnson made any determination of whether Works consented when terminating
Byers on November 15, 2017. *See*, App. at 000088 ¶53, 000341-342, 000343-345,
000354-359; *and see*, App. at 000687 (arguing these facts are irrelevant).

Agent Carter confirmed that the video does ***not*** show any sexual intercourse,
does ***not*** show Works pulling down her pants, does ***not*** show Byers pulling down
his pants, and does ***not*** show Byers penetrating Works with his fingers or his penis
although Agent Carter believed that Byers could be seen adjusting his pants. *See*,
App. at 000088 ¶51, 000319-320; *and see*, App. at 000687 (neither admitting nor
denying these facts but adding that Agent Carter confirmed the video showed "a
sexual act being attempted"). Byers' entire interaction with Works lasted less than
ten (10) minutes, and their alleged sexual encounter lasted less than five (5) minutes.
*See*, App. at 000088 ¶52, 000024 ¶40, 000321, 000349 (video) at 23:16:00 –
23:24:00; *and see*, App. at 000687 (admitting these facts).

Two (2) days later, on November 15, 2017, Agent Carter filed an Affidavit of
Probable Cause against Byers, who was arrested and charged with second degree
rape by instrumentation. *See*, App. at 000089 ¶58, 000024-025 ¶¶42-43 (citing 21
O.S. § 1111(A)(7)), 000288-292, 000315-316; *and see*, App. at 000688 (admitting

these facts). Agent Carter was only concerned with potential criminal violations and any sexual contact between a detention officer, like Byers, and an inmate, like Works, constitutes a criminal act, which made her consent immaterial to his investigation. *See*, App. at 000089, ¶59, 000325-328, 000331-333; *and see*, App. at 000688 (admitting these facts). Agent Carter believed that Byers was charged with second degree rape because he had sexual contact with Works at the jail while under the county's supervision, but Byers was not charged with first degree rape since he did not use force. *See*, App. at 000089, ¶60, 000328-332; *and see*, App. at 000688 (objecting to Agent Carter's opinion as speculative and irrelevant). The charges against Byers were dismissed without prejudice because the State lost contact with Works. *See*, App. at 000089 ¶61, 000322-324, 000361; *and see*, App. at 000688.

When explaining the incident to her mother several months later, Works described the sexual encounter as "rape." *See*, App. at 000684. She is correct that Oklahoma classifies any sexual contact between a prisoner and his or her custodian as statutory rape. *See*, App. at 000288-292; *and see*, 21 O.S. § 1111. Of course, Works knew this, having already testified against Byers in his criminal proceeding. *See*, App. at 000173, 000666-667. Since the charges were dismissed without prejudice, Byers has asserted, and continues to assert, his Fifth Amendment right against self-incrimination. *See*, App. at 000363-377; *and see*, App. at 000684-685.

12

## IV.
## SUMMARY OF ARGUMENT

The District Court found that Byers failed to prove "beyond a reasonable doubt" that the sex was consensual. *See*, App. at 000745.  It found that Byers failed to come forward with "positive proof" that Works consented. *See*, App. at 000742. Further, the District Court held a defendant must present "overwhelming evidence" of consent to prevail on summary judgment.[3] The District Court erred by elevating the burden of persuasion required and by shifting the burden of production to Byers requiring him to show that the alleged constitutional violation had not occurred.  In other words, the District Court merely presumed the sexual encounter between Works and Byers was nonconsensual and required Byers to come forward with evidence rebutting this presumption.  This was error.

The District Court also erred by finding that Works had established a constitutional violation without proof of coercion.  *See*, App. at 000743 ("There is evidence that a rational fact-finder could find Works did not consent to sexual

---

[3] *See*, App. at 000743-744 n. 39 (citing *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1126 (10th Cir. 2013) ("Even were we to adopt the same presumption as the Ninth Circuit, the presumption against consent would be overcome by the ***overwhelming evidence*** of consent") (emphasis added) (discussing rebuttable presumption adopted by *Wood v. Beauclair*, 692 F.3d 1041, 1049 (9th Cir. 2012) ("Therefore, when a prisoner alleges sexual abuse by a prison guard, we believe the prisoner is entitled to a presumption that the conduct was not consensual. The state then may rebut this presumption by showing that the conduct involved no coercive factors.").

13

relations with Byers"). The District Court found Works described the contact as "rape." *See id*. It found that she feared Byers or other staff might retaliate against her. *See id*. The District Court found that Works did not yell for help because the other female inmates could not have rendered any meaningful assistance. *See id*. However, the District Court, also, cast some doubt on its own factual findings, which cannot be reconciled with its determinations. *See*, App. at 000725 & 744 (conceding video of Works did not show any of the typical behaviors indicative of resistance, refusal, or lack of consent). Without evidence of some coercion, Works failed to establish a constitutional violation.

The only form of coercion that Works alleged, and the District Court found, concerned her own ***subjective fear*** of detention officers, which she never manifested to Byers. The law within this Circuit is not so clear that an inmate's own subjective and unmanifested fear constitutes a form of coercion. "[A] case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," ***but the law is not clearly established where "a distinction might make a constitutional difference."*** *Kerns v. Bader*, 663 F.3d 1173, 1187 (10th Cir. 2011) (emphasis added).

14

# V.
## STANDARD OF REVIEW

"When a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that [the defendant is] immune from suit.'" *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1178 (10th Cir. 2020), *cert. denied sub nom. Washington Cnty. v. Crowson*, 211 L. Ed. 2d 98, 142 S. Ct. 224 (2021) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)). "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153 (10th Cir. 2022) (quoting *Est. of Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)). "In other words, it 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (internal quotations omitted in *Paugh*) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986)).

"When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity." *Id*. (citing *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006)). "To overcome the defense of qualified immunity, the plaintiff must raise a genuine issue of material fact that '(1)

the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct.'" *Id.* (quoting *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1261 (10th Cir. 2022)). "Failure at either step requires us to grant qualified immunity." *Id.* (citing *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018)). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (quoting *Est. of Beauford*, 35 F.4th at 1261–62) (citation omitted in *Paugh*).

This Court reviews the District Court's denial of a summary judgment motion asserting qualified immunity *de novo*.[4] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rowell*, 978 F.3d at 1170–71 (quoting FED. R. CIV. P. 56(a)). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable

---

[4] *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) ("We review *de novo* the district court's denial of a summary judgment motion asserting qualified immunity") (citations omitted); *and see*, *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1170 (10th Cir. 2020) ("We review a district court's grant of summary judgment *de novo*, applying the same legal standard as the district court") (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011)).

to the nonmoving party." *Id.* at 1171 (quoting *Twigg*, 659 F.3d at 997). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Id.* (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014)) (quotations omitted in *Rowell*).

# VI.
## ARGUMENTS

### ISSUE NO. 1:    WHETHER THE DISTRICT COURT ERRED BY APPLYING THE WRONG BURDENS OF PROOF.

The District Court held Byers failed to prove "beyond a reasonable doubt" that the sex was consensual. *See*, App. at 000745. It found that Byers failed to offer any "positive proof" of Works' consent. *See*, App. at 000742. For purposes of qualified immunity, the District Court held that consent, or lack thereof, must be proven by "overwhelming evidence." *See*, App. at 000743-744 n. 39. The District Court's rulings are erroneous in several ways.

Courts, generally, "refer to the generic problem of burdens only in the plural— ***burdens*** of proof—[but] there are within that phrase two distinct, and quite different, ideas." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008) (emphasis in *Videotek*, alteration added). "One is the burden of persuasion. That is the ultimate burden assigned to a party who must prove something to a specified degree of certainty—beyond a reasonable doubt (the criminal law standard of proof for guilt); ***by a preponderance of the evidence (the usual civil law standard for***

17

*proof of a fact)*; or, perhaps, something in between, such as "clear and convincing," the patent law evidentiary standard for establishing that a patent, otherwise presumed valid, is invalid." *Id*. at 1326-27 (citations omitted, emphasis added).

With respect to the burden of persuasion in civil actions, such as this, a "preponderance of the evidence" standard applies. *See, Videotek*, 545 F.3d a 1326-27; *Johnson v. Spencer*, 950 F.3d 680, 713 (10th Cir. 2020). The District Court elevated the standard to "beyond a reasonable doubt," which typically applies in criminal cases. *See*, App. at 00745. This was error.

"A quite different burden is that of going forward with evidence—sometimes referred to as the burden of production—a shifting burden the allocation of which depends on where in the process of trial the issue arises." *Videotek*, 545 F.3d at 1327 (citations omitted). Courts construe "the phrase 'going forward with evidence' to mean both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." *Id*.

Works bore the burden of production. "When the defendant has moved for summary judgment based on qualified immunity, we still view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor." *Est. of Booker*, 745 F.3d at 411 (citation omitted). "***Unlike most affirmative defenses, however, the plaintiff would bear the ultimate***

***burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established federal law***." *Id*. (emphasis added).

"***Thus, at summary judgment, we must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct***." *Id.* at 411–12 (emphasis added) (citation omitted). "If a 'plaintiff successfully carries his two-part burden,' the 'defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity.'" *Id.* at 412 (citations omitted).

The District Court held that Byers failed to prove that the sex was consensual. *See*, App. at 000743-745. However, it expressed some reservations concerning Works' consent. *See*, App. at 000744. Only by shifting the burden of proof to Byers, did it resolve these doubts in her favor. "Failure to prove the matter as required by the applicable standard means that the party with the burden of persuasion loses on that point—thus, ***if the fact trier of the issue is left uncertain, the party with the burden loses.***" *Videotek*, 545F.3d at 1327 (emphasis added). Works was required to establish a constitutional violation by showing that the sexual activity was ***nonconsensual*** meaning that it was ***coerced*** either through ***physical force or by***

19

*nonphysical means*.[5] The District Court erred by improperly shifting the burden of production to Byers to show that no constitutional violation occurred.

The District Court held that consent, or lack thereof, must be proven by "overwhelming evidence." *See*, App. at 000743-744 n. 39 (citing *Graham*, 741 F.3d at 1126). It is unclear whether this "overwhelming evidence" standard is a hybrid between "beyond a reasonable doubt" and "preponderance of the evidence" making it akin to the "clear and convincing" standard. *Videotek*, 545 F.3d at 1326-27. Regardless, this Court has never adopted such a standard. Rather, the issue was whether a prisoner could ever legally consent to sex with one of her custodians. *Graham*, 741 F.3d at 1124. After considering this Circuit's and its sister circuits' prior precedent, this Court found there was no consensus among federal courts on

---

[5] *See*, *Brown v. Flowers*, 974 F.3d 1178, 1186 (10th Cir. 2020) ("True, *Graham* did determine that consent is a defense to a constitutional claim for sexual abuse") (reaffirming that *a plaintiff must show* "some coercion") (citing *Graham*, 741 F.3d at 1126 ("Absent contrary guidance from the Supreme Court, we think it proper to treat sexual abuse of prisoners as a species of excessive-force claim, *requiring at least some form of coercion (not necessarily physical) by the prisoner's custodians*") (emphasis added); *Baca v. Rodriguez*, 554 Fed. Appx. 676, 678 (10th Cir. 2014) (unpublished) (upholding district court's dismissal of plaintiff's action for failing to allege any facts from which it could be inferred that defendant coerced her into having sex) (citing *Graham*, 741 F.3d at 1126)). **NOTE**: Byers refers to unpublished decisions, like *Baca*, not for any precedential value, but for their persuasive value based upon their reasoned analysis. *See*, FED. R. APP. P. 32.1(a); 10TH CIR. R. 32.1(A).

whether, or to what extent, consent was a defense to an Eighth Amendment claim based on sexual contact with a prisoner.[6]

This Court explained that the Ninth Circuit in *Wood* adopted a middle ground by creating a rebuttable presumption of non-consent that can be rebutted by showing the sexual interaction "involved no coercive factors." *Id.* at 1125 (quoting *Wood*, 692 F.3d at 1049). ***Without adopting the Ninth Circuit's rebuttable presumption framework***, this Court found that the evidence established Graham's consent. *Id*. at 1126. This Court stated, "***Even were we to adopt the same presumption as the Ninth Circuit***, the presumption against consent would be overcome by the ***overwhelming evidence*** of consent." *Id*. (emphasis added).

While holding that consent was, indeed, a defense, this Court did ***not*** adopt the Ninth Circuit's framework, precisely, because the evidence in *Graham* was so overwhelming. *Graham*, 741 F.3d at 1126. The District Court's invocation of *Graham* as adopting both a "rebuttable presumption" and an "overwhelming evidence" standard goes too far. *See*, App. at 000743-744 n. 39. ***Graham never created such standards.***

---

[6] *Id.* at 1124–25 (discussing *Lobozzo v. Colorado Dep't of Corr.*, 429 Fed. Appx. 707 (10th Cir. 2011) (unpublished); *Hall v. Beavin*, 202 F.3d 268 (6th Cir. 1999); *Freitas v. Ault*, 109 F.3d 1335 (8th Cir. 1997); *Cash v. Cnty. of Erie*, Case No. 04-CV-0182-JTC(JJM), 2009 WL 3199558 (W.D.N.Y. Sept. 30, 2009) (unpublished); *Carrigan v. Davis*, 70 F. Supp. 2d 448 (D. Del. 1999); *and*, *Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012)).

The District Court held that Works had established a violation of her constitutional rights. *See*, App. at 000743. It did so by finding that Byers had not shown by "overwhelming evidence" or "beyond a reasonable doubt" that she had consented. *See*, App. at 000743-744. In doing so, the District Court merely presumed that Works' allegations of nonconsensual forceful sex were true and required Byers to rebut this presumption with overwhelming evidence. *See*, App. at 000000742-745.  Since there was uncertainty regarding her consent, the District Court should have resolved those uncertainties in favor of Byers because Works had the burden of establishing a constitutional violation by showing some form of coercion.  As the District Court found, Works failed to carry her burden of proof. *See*, App. at 000744 ("This is not to say there is no evidence suggestive of consent").  The District Court's rulings were in error.

ISSUE NO. 2:     **WHETHER THE DISTRICT COURT'S FACTUAL FINDINGS WERE ERRONEOUSLY BASED UPON A VISIBLE FICTION BLATANTLY CONTRADICTED BY THE RECORD EVIDENCE.**

The District Court made specific factual findings that are blatantly contradicted by the record evidence, which factored into its decision. When reviewing a denial of summary judgment based on qualified immunity, appellate courts, generally, lack jurisdiction to review factual disputes. *Paugh*, 47 F.4th at 1152 (citation omitted). "There is an exception to this jurisdictional limitation 'when

22

the version of events the district court holds a reasonable jury could credit is blatantly contradicted by the record.'" *Id.* at 1153 n. 15 (quoting *Crowson*, 983 F.3d at 1177) (additional citation omitted). In such circumstance, review is *de novo. Crowson*, 983 F.3d at 1177 (citations omitted). "A mere claim that the record 'blatantly' contradicts the district court's factual recitation ... does not require us to look beyond the facts found and inferences drawn by the district court." *Id.* (ellipses in *Crowson*). "Rather, the court's findings must constitute 'visible fiction.'"[7]

Specifically, this Court has "jurisdiction 'to review '(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation.'" *Cox v. Glanz*, 800 F.3d 1231, 1242 (10th Cir. 2015) (citations omitted). As this Court explained:

> The court's analysis was *not* consonant with our settled mode of qualified-immunity decisionmaking. Specifically, the court's central focus was on the existence *vel non* of genuinely disputed issues of material fact, and that focus is counter to our established qualified-immunity approach. At the summary-judgment phase, a federal court's factual analysis relative to the qualified-immunity question is distinct: [T]he objective is *not* to determine whether a plaintiff survives summary judgment because plaintiff's evidence raises material issues that warrant resolution by a jury. Instead, the principal purpose is to

---

[7] *Id*. (citing *Lynch v. Barrett*, 703 F.3d 1153, 1160 n. 2 (10th Cir. 2013) (explaining that a "blatant contradiction" may arise where "a videotape capturing the events in question 'quite clearly contradict[ed] the version of the story told by [plaintiff] and adopted by the Court of Appeals'") (quoting *Scott v. Harris,* 550 U.S. 372, 378-81, 127 S.Ct. 1769, 1774-77, 167 L.Ed.2d 686 (2007) (alterations in *Lynch*).

determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court.[8]

In the context of sexual contact, that legal question is whether the plaintiff was forced to have sex by either physical force or by nonphysical means of coercion, which may be evidenced by either physical or verbal assertions or manifestations of non-consent or by favors, privileges, or any other type of exchange for sex.[9]

The District Court found, "According to Works, she could not exit the laundry room because Byers was physically blocking her." *See*, App. at 000724. It accepted that "she was frightened." *See id*. The District Court concluded, "Works has described the sexual contact with Byers as 'rape[].'" *See id*. It also observed, "Works did not call out for help during the encounter" finding "she was too scared

---

[8] *Id.* at1243 (first citing *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1267 (10th Cir. 2013); then quoting *Thomson v. Salt Lake Cty.,* 584 F.3d 1304, 1326 (10th Cir.2009) (Holmes, J., concurring) (alterations in *Cox*); then quoting *United States ex rel. Burlbaw v. Orenduff,* 548 F.3d 931, 940 n. 6 (10th Cir. 2008) (exhorting courts to "exercise care not to confuse the two analytic frameworks" of qualified immunity and traditional summary judgment, though acknowledging that, "at least in some instances, this ... is easier said than done") (alteration in *Cox*).

[9] *Graham*, 741 F.3d at 1126 ("Absent contrary guidance from the Supreme Court, we think it proper to treat sexual abuse of prisoners as a species of excessive-force claim, ***requiring at least some form of coercion (not necessarily physical)*** by the prisoner's custodians") (emphasis added) (citing *Wood*, 692 F.3d at 1049 ("explicit assertions or manifestations of non-consent indicate coercion, but so too may favors, privileges, or any type of exchange for sex"); *Hale v. Boyle Cnty.*, 18 F.4th 845, 854 (6th Cir. 2021) (same) (quoting *Wood*, 692 F.3d at 1049).

24

to call for help" and that she believed "that it would not have helped since Byers was the only staff officer present at the jail."[10]  The District Court acknowledged, "She did not […] promise him anything to have sex with him.  He did not promise her anything." *See id.* (alteration added).

Further, the District Court found, "[t]he video show[s] Byers' back as he appears to engage in some form of sexual contact with Works, an encounter lasting less than five minutes." *See id.* (alterations added). It also concluded, "Works has testified that she did not report the incident out of fear of retaliation by jail staff." *See id.* at 000726.  Moreover, it recognized that "[d]uring his deposition, when asked about whether the sexual contact was consensual, or whether it occurred or even if he was alone with Works in the laundry room, Byers invoked his Fifth Amendment right and declined to answer."  *See id.* (alteration added).

The video, however, tells a different story.  When Byers first enters the laundry room, he has a discussion with Works and then leaves. *See*, App. at 000394 at 23:16:14 – 23:16-33.  He returns, a second time, has another discussion with Works, and then leaves.  *See id.* at 23:16:52 – 24:16:59. Byers returns, a third time, and another discussion ensues before he embraces Works and lifts her onto a counter

---

[10] *See id.* at 000724-725. In another part of its opinion, however, the District Court found that the official capacity defendants' policies and practices of having only one jailer on duty during the night shift was sufficient. *See*, App. at 000731-32 & 000751.

while she grabs back, but Byers, again, leaves. *See id*. at 23:17:21 – 23:18:02. For some twenty (20) seconds, Byers is not in the laundry room while Works remains inside. *See id*. 23:18:13 – 23:18:32. Byers returns, a fourth time, Works bends over in front of him, but he turns and leaves. *See id*. at 23:18:33 – 23:18:48. Over the next minute, Byers is not in the laundry room, but Works does not leave or attempt to do so. *See id*. at 23:18:49 – 23:19:49.

Byers returns, a fifth time, and the alleged sexual assault takes place over the next two minutes and seventy-six seconds. *See id*. at 23:19:50 – 23:22:26. Thereafter, Byers and Works either continue looking for a slip of paper or, at least, pretend to be doing so, and Works can be seen crawling around looking for something before handing Byers an envelope. *See id*. at 23:22:26 – 23:22:40. Byers merely tosses the envelope on the floor. *See id*. at 23:22:41 – 23:22:43. Byers and Works nonchalantly discuss something before he leaves. *See id*. at 23:22:45 – 23:22:48. Works rummages through a drawer, closes it, converses with Byers across the hall, shrugs her shoulders, and then returns to her cell. *See id*. at 23:22:49 – 23:23:22.

Despite the video, the District Court held "a rational fact-finder could find Works did not consent to sexual relations with Byers." *See*, App. at 000743. It so held, in part, because "Works has described the contact as 'rape.'" *See id*. But Works only described the contact as rape when explaining the situation to her mother ***after***

Byers had been charged and she had testified against him.  *See*, App. at 000173, 000288-292, 000727.  Works is correct, under Oklahoma law, even ***consensual*** sex between jail staff and a prisoner is "rape." *See*, 21 O.S. § 1111.  Stated another way, consent is immaterial under Oklahoma law.  *See*, App. at 000102-105; 000711, 000727 (acknowledging that Agent Carter did not consider whether Work's consented when charging Byers with rape).

The District Court also found that Works had established her lack of consent, in part, because she claimed to be incapable of leaving the laundry room because Byers physically prevented her from doing so.  *See*, App. at 000743.  But the video clearly disputes this account.  *See*, App. at 000349.  Works never attempted to leave, and Byers never physically prevented her from doing so.  *See id*.  The video shows just the opposite.  At no time does Byers or Works ever use physical force at all whatsoever against each other.  *See id*.

The District Court also held that Works did not consent because she was frightened and feared that Byers or other jail staff may retaliate against her.  *See*, App. at 000743. However, this is not a rational conclusion that supports Works' alleged lack of consent.  Perhaps, a fear of reprisal might have discouraged Works from reporting the incident, but it has nothing to do with whether she consented.

Another reason the District Court held Works did not consent was that her failure to call for help "carried little weight" since yelling for help would, likely,

have been futile. *See*, App. at 000743-744. This misses the point. It is not that someone could have intervened so much as an affirmative act, like screaming, would have manifested to Byers her lack of consent, which he then could have recognized.

Moreover, the District Court found that Works could not recall ever telling Byers that she did not want sex. *See id*. at 000744. Works did not take any actions, either physical or verbal, to demonstrate her lack of consent. *See id*. She did not appear to be fearful, scared, distraught, upset, nervous, or anxious. *See id*. Works, at most, contends that she was subjectively afraid. *See*, App. at 000725 & 742. However, Works does not point to anything that she did or said to Byers objectively demonstrating her fear, surprise, or fright.

To establish a lack of consent, a plaintiff is required to prove either objective assertions or manifestations were made or establish that favors, privileges, or some other exchange was involved. *Graham*, 741 F.3d at 1126 (citing *Wood*, 692 F.3d at 1049); *Hale*, 18 F.4th at 854 (quoting *Wood*, 692 F.3d at 1049). Neither Byers nor Works used any physical force against each other before, during, or after the incident. *See*, App. at 000097. Works never resisted Byers' advances, ether physically or verbally, and Byers never gave or promised her any favors, privileges, or anything else in exchange for sex. *See id*. at 000097-098. ***Works failed to present evidence of any coercion.*** The District Court's findings are blatantly contradicted

by the record evidence. The District Court erred by finding that Works presented

sufficient evidence of her lack of consent.

**ISSUE No. 3:** **WHETHER WORKS WAS ENTITLED TO AN ADVERSE INFERENCE THAT BYERS COERCED HER TO HAVE SEX.**

Works argued for an adverse inference that Byers would admit that he

"coerced" her to have sex based on his invocation of his Fifth Amendment right to

remain silent. *See*, App. at 000681-693. The District Court invoked this adverse

inference against Byers stating that by his silence he offered no "positive proof" of

Works' lack of consent. *See*, App. at 000742. However, an adverse inference, alone,

is insufficient for summary judgment absent additional evidence.[11] Even Works

conceded as much.[12]

While it invoked such an adverse inference against Byers, the District Court

did so without making any finding about whether Byers prohibited Works from

discovering evidence. "[L]itigants denied discovery based upon an assertion of the

privilege may ask the court to draw a negative inference from the invocation of that

---

[11] *See*, App. at 000742, n. 38. (citing *U.S. S.E.C. v. Suman*, 684 F. Supp. 2d 378, 386 (S.D.N.Y. 2010), *aff'd,* 421 Fed. Appx. 86 (2d Cir. 2011)).

[12] *See*, App. at 000684-85 n. 1 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976); *Suman*, 684 F. Supp. 2d at 386; *LiButti v. United States*, 107 F.3d 110, 120 (2d Cir. 1997)).

right."[13] "This is because invocation of the privilege necessarily results in a disadvantage to opposing parties by 'keep[ing] them from obtaining information they could otherwise get.'" *Id*. (citation omitted) (alteration in *Pittsford Capital*). "Accordingly, when a party invokes the Fifth Amendment privilege in a civil case, ***courts may then preclude that party from introducing evidence that was not previously available to his or her adversary due to the party's invocation of the privilege***." *Id*. (emphasis added).

Works has not shown that Byers' assertion of his right to remain silent has somehow precluded her from obtaining evidence. *See*, App. 000682-688, ¶¶1-62. Both Works and Byers had access to the video. *See*, App. at 000687, ¶46-50. Likewise, both took or participated in the depositions of other witnesses. *See*, App. at 000684, ¶¶16-24. Both had access to Agent Carter's report. *See*, App. at 000685 & 687, ¶¶26 & 51. This evidence was previously and equally available to Works prior to and independent of Byers' deposition. Neither the District Court nor Works has shown any justifiable basis for drawing an "adverse inference."

---

[13] *S.E.C. v. Pittsford Capital Income Partners, L.L.C.*, Fed. Sec. L. Rep. P 94476, 2007 WL 2455124, at *14 (W.D.N.Y. Aug. 23, 2007) (unpublished) (citations omitted), *aff'd in part, appeal dismissed in part sub nom. S.E.C. v. Pittsford Capital Income Partners, LLC*, 305 Fed. Appx. 694 (2d Cir. 2008); *S.E.C. v. Invest Better 2001*, Case No. 01 CIV. 11427 (BSJ), 2005 WL 2385452, at *2 (S.D.N.Y. May 4, 2005) (unpublished) (same).

Even if Works could show that Byers' invocation of his Fifth Amendment privilege somehow precluded her from obtaining evidence (which she cannot), Works has not shown that this Court must adopt the adverse inference she suggests: that Byers would admit to having "nonconsensual" sex with her, which he "coerced." *See*, App. at 000681-682, 000691-692. The District Court failed to determine in the first instance to what extent adverse inferences should be drawn in respect to the questions posited to Byers at his deposition which he refused to answer.[14] Although Byers requested the District Court do so, it simply refused to evaluate his invocation of his rights under FED. R. EVID. 403 to determine whether the risk of unfair prejudice from the suggested inference outweighed its probative value and the weight that his refusals may be accorded in light of all the other evidence.[15]

Works suggests her lack of consent should be inferred from Byers' testimony because he testified:

Q:    Did you ask Ms. Works to go to the laundry room?

---

[14] *See*, App. at 000742 ("for purposes of resolving the motions for summary judgment, it is sufficient to note that, by remaining silent, Byers offers no positive proof that Works consented to having sex"); *and see*, *LiButti*, 107 F.3d at 124 ("the district court should […] evaluate the relevance of [the witness's] refusals and their probative value under FED. R. EVID. 403, and the weight they should be accorded in the context of all of the other evidence") (alterations added).

[15] *See*, App. at 000709, n. 20 (quoting *LiButti*, 107 F.3d at 124 ("the strength and cogency of the adverse inference should, of course, be tested against the other evidence in the case") (quoting *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995)).

31

A:    Upon the advice of my criminal attorney, I invoke my Fifth Amendment right not to answer.

Q:    Were you alone with Ms. Works in the laundry room?

A:    Upon the advice of my criminal attorney, I invoke my Fifth Amendment right not to answer.

Q:    Did you ask Ms. Works to drop her pants?

A:    Upon the advice of my criminal attorney, I invoke my Fifth Amendment right not to answer.

…

Q:    Isn't it true that you, while acting as a jailer in the Pushmataha County Jail, had sexual contact with Ms. Works in the laundry room?

A:    Upon the advice of my criminal attorney, I invoke my Fifth Amendment right not to answer.

***Q:    Isn't it true that the sexual contact with Ms. Works was nonconsensual?***

***A:    Upon the advice of my criminal attorney, I invoke my Fifth Amendment right not to answer.***[16]

Works argues that Byers' refusal to answer these questions suggests that his answers would have been "yes."  *See*, App. at 000681-682 & 000691-692.

Byers' invocation of the privilege does ***not*** create a substantial inference that his answers would have been in the affirmative. The weakness of the inference Works seeks is demonstrated by Byers invoking the privilege in response to every

---

[16] *See*, App. at 000681-682 & 000685 (quoting App. at 000625 (Doc. #100-17), Byers Dep. (Jul. 21, 2021) at App. 000626-629) (emphasis in Work's Reply Brief).

question. *See id.* While the inference that Works seeks may not be prejudicial in the sense of being inflammatory, it is clearly prejudicial in the sense of precluding Byers from asserting qualified immunity by prohibiting his defense of "consent" (*i.e.*, it is "damning"). *See, Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (citations omitted). As Judge Winter explained, this tactic lacks probative value:

> Obviously, the posing of fact-specific questions is designed to suggest to the jury that but for the privilege the answer in each case would have been "yes." However, since the privilege may be invoked as to any answer "which would furnish a link in the chain of evidence needed to prosecute the claimant," and "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer ... or an explanation of why it cannot be answered might be dangerous," assertion of the privilege in response to specific questions such as these quoted above is permissible whether the answer is "yes" or "absolutely not." Nevertheless, the self-evident purpose of such questioning is to suggest that the answer would be "yes." Otherwise, the questions would never be asked. This practice inevitably invites jurors to give evidentiary weight to questions rather than answers. Moreover, it leaves the examiner free, once having determined that the privilege will be invoked, to pose those questions which are most damaging to the adversary, safe from any contradiction by the witness no matter what the actual facts.[17]

The negative inference urged by Works, based on the totality of the circumstances, is not a trustworthy one. Byers' invocation of his rights has little, if any, probative value. The District Court erroneously invoked an adverse inference against Byers.

---

[17] *Brink's*, 717 F.2d at 716 (Winter, J., dissenting) (quoting *Hoffman v. U. S.*, 341 U.S. 479, 486–87, 71 S. Ct. 814, 818-19, 95 L. Ed. 1118 (1951)) (footnote omitted).

**ISSUE NO. 4:**     **WHETHER THE LAW WAS CLEARLY ESTABLISHED ON NOVEMBER 13, 2017 THAT AN INMATE'S UNMANIFESTED SUBJECTIVE FEAR MAY ESTABLISH A LACK OF CONSENT.**

As the District Court acknowledged, the video does not depict Byers physically forcing Work's to have sex, and Work's testified that Byers did not use any nonphysical means of coercing her to have sex. *See*, App. at 000725 & 744. Rather, Works argued, and the District Court agreed, that her subjective fear should have made him aware of her lack of consent. *See*, App. at 000725 & 743-44. The issue, then, is whether Works can shoe she was coerced based on her own subjective fear, which she never manifested to Byers.

The District Court held that the law within this Circuit "ha[s] long held that **_nonconsensual_**, **_coerced_** sex between a jailer and an inmate violates the Constitution." *See*, App. at 000744-745 n. 41 (quoting *Brown*, 974 F.3d at 1186). While a correct statement of the law, this states the law generally while ignoring the specific nuances at issue. *Brown*, 974 F.3d at 1184 (recognizing that a court "may 'not ... define clearly established law at a high level of generality'"). Neither Works nor the District Court point to any authorities from the Supreme Court, within this Circuit, or that from a consensus of other circuits holding that an inmate's unmanifested subjective fear may form some coercion. *See*, App. at 000692-393 & 000744-745.

34

Since *Graham*, this Court has reaffirmed that "consent" is a defense and that a plaintiff must show "some coercion."[18] Of course, this Court has held that **physically forceful nonconsensual** sex is "unquestionably 'repugnant to the conscience of mankind […]'" *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020). **However, that is not this case.** The video, clearly, shows that neither Byers nor Works used any sort of physical force. *See*, App. at 000349.

Works' arguments, and the District Court's analysis, hinge on whether she was coerced **through nonforceful means** to have sex. *See*, App. at 000689-692 & 000742-745. As District Court commented, consent and coercion can be curious things in the context of confinement. *See*, App. at 000745 ("a court may properly consider the inherently coercive nature of imprisonment"). But such considerations apply where "[t]he power dynamics between prisoners and guards make it difficult to discern consent from coercion."[19]

---

[18] *See*, *Brown*, 974 F.3d at 1186 ("True, *Graham* did determine that consent is a defense to a constitutional claim for sexual abuse") (citing *Graham*, 741 F.3d at 1125–26); *Baca*, 554 Fed. Appx. at 678 (citing *Graham*, 741 F.3d at 1126).

[19] *Graham*, 741 F.3d at 1125 ("**in addition to words or behavior showing opposition**, coercive factors could include '**favors, privileges, or any type of exchange for sex**'") (emphasis added) (quoting *Wood*, 692 F.3d at 1047 (noting that "[e]ven if the prisoner concedes that the sexual relationship is 'voluntary,' because sex is often traded for favors (more phone privileges or increased contact with children) or 'luxuries' (shampoo, gum, cigarettes), it is difficult to characterize sexual relationships in prison as truly the product of free choice").

Neither the District Court nor Works point to any specific "power dynamics" being involved or any case law where, absent such power dynamics, the plaintiff's unmanifested fear satisfied the constitutional standard. Works did not manifest, either verbally or physically, that she refused Byers' advances, and she testified that nothing was exchanged. *See*, App. at 000743-744.

The case law is clear. To establish a constitutional violation, Works was required to show that Byers used some nonphysical means of coercion. *See*, *Brown*, 974 F.3d at 1186; *Graham*, 741 F.3d at 1125–26; *Hale*, 18 F.4th at 854. She had to do so by showing that she refused Byers' advances, either physically or verbally, or that he promised her something, favors or privileges, in exchange for sex. *Graham*, 741 F.3d at 1126; *Wood*, 692 F.3d at 1049; *Hale*, 18 F.4th at 854. The video shows that she did not physically resist. *See*, App. at 000349. She concedes that she did not call out for assistance, tell Byers she did not want to have sex, or otherwise verbally refuse his advances. *See*, App. at 000685, ¶25; 000743-744. She testified that Byers did not give her any favors or privileges for sex. *See*, App. at 000085, ¶29, 000686, ¶29, 000725.

***Works' own testimony, among other evidence, shows that Byers did not use any nonphysical means of coercion to force her to have sex***. Rather, she argued, and the District Court agreed, that she consented to the sex because of her own ***unmanifested subjective fear***. But this Court, among others, requires something

36

more—an objective verbal or physical manifestation of resistance or evidence of a *quid pro quo* exchange. *Graham*, 741 F.3d at 1126; *Wood*, 692 F.3d at 1049; *Hale*, 18 F.4th at 854. The District Court erred by finding that the law was clearly established that a plaintiff may prove coercion based solely upon his or her own subjective unmanifested fears.

## VII.
## CONCLUSION

The District Court applied the wrong burden of proof while erroneously shifting the burden of persuasion to Byers. It found that Byers had not shown by "overwhelming evidence" or "beyond a reasonable doubt" that Works had consented. The District Court merely presumed that Works' allegations were true and required Byers to rebut this presumption with overwhelming evidence.

The District Court's factual findings are premised upon a visible fiction contradicted by video evidence. The video is conclusive proof that Byers never, at any time, physically prevented Works from leaving the laundry room. It also shows that Works never at any time attempted to leave. The video clearly demonstrates that neither Byers nor Works used any physical force at all against one another before, during, or after the sexual activity. The District Court's findings to the contrary are a visible fiction.

The District Court adopted an adverse inference that Byers would testify to having nonconsensual sex with Works.  The District Court failed to conduct any analysis as to whether such an inference was permissible.  Works made no showing that Byers' testimony precluded her from discovery of evidence concerning her consent.  The District Court failed to analyze the suggested adverse inference for its prejudicial effect and in light of all other evidence.

The District Court defined the clearly established law in a highly generalized manner.  It found the law to be clearly established that an inmate's unmanifested subjective fear constitutes a form of coercion.  The District Court ignored this Court's precedent delineating the "coercive factors" required to establish a lack of consent.  Instead, the District Court created an entirely new standard.

## ORAL ARGUMENT

Pursuant to 10TH CIR. R. 28(C)(2), Defendant/Appellant Timothy Byers provides this statement on the reasons for requesting oral argument. This is a matter of important public interest which concerns state actors, the correctional system, and the state's penological interests. Oral argument may help clarify the nuances inherent to the constitutional analysis.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 10,700 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2209 Build 16.0.15629.20152) in Times New Roman, 14 point font.

**Dated December 20, 2022**.

GOOLSBY PROCTOR

*/s/ Seth D. Coldiron*
Seth D. Coldiron (OBA No. 20041)
701 N. Broadway Ave., Suite 400
Oklahoma City, Oklahoma 73102
Telephone: (405) 524-2400
Facsimile: (405) 525-6004

scoldiron@gphglaw.com

*Attorney for Defendant/Appellant,*
*Timothy Byers*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1.  all required privacy redactions have been made per 10TH CIR. R. 25.5;

2.  if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3.  the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Malwarebytes Anti-Malware, Version 2.1.8.1057, 8-18-2015, and according to the program are free of viruses.

GOOLSBY PROCTOR

*/s/ Seth D. Coldiron*
Seth D. Coldiron (OBA No. 20041)
701 N. Broadway Ave., Suite 400
Oklahoma City, Oklahoma 73102
Telephone: (405) 524-2400
Facsimile: (405) 525-6004

scoldiron@gphglaw.com

*Attorney for Defendant/Appellant,*
*Timothy Byers*

41

# CERTIFICATE OF SERVICE

I, hereby, certify that on December 20, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen (OBA #19942)
Robert M. Blakemore (OBA #18656)
Bryon D. Helm (OBA #33003)
SMOLEN & ROYTMAN
701 S. Cincinnati Avenue
Tulsa, OK 74119
Email: danielsmolen@ssrok.com
      bobblakemore@ssrok.com
      bryonhelm@ssrok.com
*and*

Blake E. Lynch (OBA #22634)
Wagner & Lynch
109 E. Washington
McAlester, OK 74501
Email: blake@wagnerandlynch.com

*Attorneys for Plaintiff/Appellee,*
*Savannah Works*

Wellon B. Poe (OBA #12440)
COLLINS ZORN & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105
Emails: wbp@czwlaw.com

*Attorney for Defendant,*
*B.J. Hedgecock, in his official capacity as*
*Sheriff of Pushmataha Cty, Okla.*

I further certify that on December 20, 2022, seven (7) true and correct copies of the foregoing Brief in Chief of Appellant were dispatched to third-party delivery service for delivery within two (2) business days to:

Christopher M. Wolpert, Clerk of the Court
United States Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257

*/s/ Seth D. Coldiron*

42

## CERTIFICATION UNDER ECF PROCEDURES

I, hereby, confirm the following:

1.    All required privacy redactions have been made;

2.    The hard copy of the Joint Appendix submitted to the Clerk's office is an exact copy of the EFC filing; and

3.    The ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program is free of any viruses.


*/s/ Seth D. Coldiron*

43